IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAXITRANSFERS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ENVIOS MI FIESTA FACIL 2 LLC, MULTISERVICIOS MI FIESTA FACIL LLC, REFRESKERIA MI FIESTA FACIL 2 LLC, and JOSE DE JESUS PEÑALOZA GARCIA,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR FOR DEFAULT JUDGMENT<br><br>Case No. 2:24-cv-00772-TC<br><br>Judge Tena Campbell |

Plaintiff Maxitransfers LLC (Maxitransfers) initiated this breach of contract action on October 14, 2024, alleging that Envios Mi Fiesta Facil 2 LLC (Envios), Multiservicios Mi Fiesta Facil LLC (Multiservicios), Refreskeria Mi Fiesta Facil 2 LLC (Refreskeria), and Jose De Jesus Peñaloza Garcia (collectively, the Defendants) each failed to remit funds owed to Maxitransfers, in breach of three separate "money transmission agreements" (MTAs), as well as a security agreement (the Promissory Note) and guaranty (the Guaranty Agreement) associated with the performance of one of the MTAs. This matter comes before the court on Maxitransfers' motion for default judgment (ECF No. 20) against all Defendants. After reviewing the Complaint, the

1

motion, and the relevant law, the court denies Maxitransfers' motion for default judgment for failure to establish that this court has subject matter jurisdiction over its claims.

## FACTUAL ALLEGATIONS[1]

This is a case concerning breaches of three similar but separate contracts, each between different parties. Maxitransfers, a party to all the contracts relevant to this case, is an LLC based in Texas. The LLC has just one member, a trust called 2020 Maxitransfers Trust (the Trust). (Compl., ECF No. 1 at ¶¶ 11–12; see also Pl.'s Corporate Discl. Statement, ECF No. 2.) The Trust has just one trustee, Joseph Niehaus, who is allegedly domiciled in California. The Complaint contains no allegations regarding the identity of the beneficiaries of this Trust.

Maxitransfers' business involves money transmission: receiving currency or other value that substitutes for currency from one party and transmitting it to another party, charging the sender a small transaction fee. Maxitransfers outsources the processing and facilitation functions of these money transmissions to third party companies, like the Defendants. (Compl. ¶ 1.)

### I.     Breach of the Envios MTA

On February 5, 2014, Maxitransfers and Envios entered an MTA (the Envios MTA). (Id. ¶ 18; Envios MTA, ECF No. 1-1.) Envios is a now-dissolved LLC organized in Utah. (Compl. ¶ 2.) Under the Envios MTA, Envios agreed to facilitate money transfers between Maxitransfers' customers, notifying Maxitransfers when a transaction was initiated so that the company could send equivalent funds to the recipients. (Id. ¶¶ 19–20.) Envios would then hold the senders' funds (including the transaction fee) in trust before delivering them to Maxitransfers by the

---

[1] The court accepts the Complaint's allegations as true for the purposes of this order. See Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014).

following Monday, Wednesday, or Friday. (Id. ¶ 21.) In consideration for these services, Maxitransfers would pay Envios a portion of the transaction fees. (Envios MTA at ¶ 4.)

The Envios MTA contains an attorney's fees provision, which states:

> [I]f any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover attorney's fees, court costs, and other costs incurred in proceeding with the action from the other party.

(Id. ¶ 19.)

While Maxitransfers complied with its contractual obligations, Envios failed to deliver to Maxitransfers $18,947.92 in customer funds. (Compl. ¶¶ 26–27, 31.) As a result, Maxitransfers suspended the Envios MTA on September 6, 2024. (Id. ¶ 30.)

## II.  Breach of the Multiservicios MTA, Promissory Note, and Guaranty Agreement

On June 26, 2014, Maxitransfers and Multiservicios entered an MTA (the Multiservicios MTA), which was similar in form and function to the Envios MTA. (Id. ¶ 35; Multiservicios MTA, ECF No. 1-2.) Multiservicios is a now-dissolved LLC organized in Utah. (Compl. ¶ 4.) Multiservicios agreed to facilitate money transfers from Maxitransfers' customers, notifying Maxitransfers when a transaction was initiated so that the company could send equivalent funds to the recipients. (Id. ¶ 36.) Multiservicios would then hold the sender's funds (including the transaction fee) in trust before delivering them to Maxitransfers by the following Monday, Wednesday, or Friday. (Id. ¶¶ 37–38.) In consideration, Maxitransfers would pay Multiservicios a portion of the transaction fees. (Multiservicios MTA at ¶ 4.)

The Multiservicios MTA contains an attorney's fees provision, which states:

> [I]f any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover actual attorney's fees, court costs, and other costs incurred in proceeding with the action from the other party.

3

(Id. ¶ 19.)

While Maxitransfers complied with its contractual obligations, Multiservicios failed to deliver to Maxitransfers $39,502.42 in customer funds. (Compl. ¶¶ 43–44.) As a result, Maxitransfers suspended the Multiservicios MTA on September 6, 2024. (Id. ¶ 47.)

Months later, on February 9, 2024, Multiservicios and Mr. Garcia, the company's "controlling member," executed another agreement (the Promissory Note) agreeing "jointly and severally" to pay Maxitransfers back on a nine-month payment schedule for the outstanding money transfer funds. (Id. ¶¶ 52–53; Promissory Note, ECF No. 1-3 at 1.) The Promissory Note's execution was "dependent upon the agreement of [Mr.] Garcia to guaranty, personally, the repayment of the [Promissory] Note" with a separate Guaranty Agreement. (Promissory Note at ¶ 3.)

Mr. Garcia concurrently executed the Guaranty Agreement, in which he agreed to personally pay Multiservicios' obligations under the Promissory Note if Multiservicios defaulted. Mr. Garcia also agreed to pay any reasonable attorney's fees and costs incurred by Maxitransfers in enforcing the Guaranty Agreement. (Compl. ¶ 61; Guaranty Agreement, ECF No. 1-5 at 1, 3.)

Multiservicios and Mr. Garcia have failed to pay Maxitransfers the funds owed under the Multiservicios MTA, the Promissory Note, and the Guaranty Agreement. (Compl. ¶ 65.)

### III.    Breach of the Refreskeria MTA

On July 3, 2019, Maxitransfers and Refreskeria entered an MTA (the Refreskeria MTA), which is similar in form and function to the Envios and Multiservicios MTAs. (Id. ¶ 70; Refreskeria MTA, ECF No. 1-7.) Refreskeria is a now-dissolved LLC organized in Utah. (Compl. ¶ 6.) Under the Refreskeria MTA, Refreskeria agreed to facilitate money transfers between Maxitransfers' customers, notifying Maxitransfers when a transaction was initiated so

4

that it could send equivalent funds to the recipients.  (Id. ¶¶ 71–72; Refreskeria MTA.)  Refreskeria would then hold the senders' funds (including the transaction fee) in trust before delivering them to Maxitransfers by the following Monday, Wednesday, or Friday.  (Id. ¶ 73.)  In consideration for these services, Maxitransfers would pay Refreskeria a portion of the transaction fees.  (Refreskeria MTA at ¶ 4.)

The Refreskeria MTA also contains an Attorney's Fees clause which states:

> [I]f any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover actual attorney's fees, court costs, and other costs incurred in proceeding with the action from the other party.

(Id. ¶ 19.)

While Maxitransfers complied with its contractual obligations, Refreskeria failed to deliver to Maxitransfers $36,467.20 in customer funds.  (Compl. ¶¶ 78–79, 83.)  As a result, Maxitransfers suspended the Refreskeria MTA on September 6, 2024.  (Id. ¶ 82.)

### IV.     Motion for Default Judgment

Maxitransfers served all Defendants by December 23, 2024.  (Order Granting Mot. Alternative Service dated December 6, 2024, ECF No. 14; Return of Service, ECF No. 16-2.)  None of the Defendants responded to the Complaint.  Accordingly, the clerk entered default certificates against all Defendants on February 10, 2025.  (ECF No. 17.)

On March 6, 2025, Maxitransfers filed a motion to enter default judgment against all Defendants.  (ECF No. 20.)  Maxitransfers requests that the court award it: $18,947.92 from Envios; $39,502.42 from Multiservicios; $12,214.74 from Multiservicios and Mr. Garcia jointly and severally; $36,467.20 from defendant Refreskeria; and $23,245.93 in attorney's fees and costs to be split among the defendants.  (Id. at 9–10.)  Maxitransfers represents that it has no basis by which to allocate the attorney's fees among the four Defendants.  (Id. at 9.)

5

Maxitransfers further requests post-judgment interest at the rate allowed by 28 U.S.C. § 1961(a). (Id. at 10.)

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the court clerk must enter default. See Fed. R. Civ. P. 55(a). But a clerk's entry of default is not sufficient, on its own, to warrant the court entering a default judgment. See Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010). Once default is entered, the court must determine whether it has jurisdiction, that the unchallenged facts plausibly establish the defendant's liability, and that the party is entitled to the relief requested. See id. at 761–62; see also Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."); Oso Grande Techs., Inc. v. BCG Assets, Inc., 2023 WL 8372173, at *1 (D.N.M. Dec. 4, 2023) (denying default judgment because, among other reasons, the court lacked personal jurisdiction over the defendant).

## DISCUSSION

In order to invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." Dutcher v. Matheson, 733 F.3d 980, 987 (10th Cir. 2013) (citing Symes v. Harris, 472 F.3d 754, 758 (10th Cir. 2006)). Maxitransfers alleges that the Court has diversity jurisdiction over the case under 28 U.S.C. § 1332 because Maxitransfers is diverse from all Defendants and because the total amount in controversy, aggregated against all of the Defendants, is at least $107,123.28 in direct damages, plus $23,245.93 in contractually mandated attorney's fees. For the reasons discussed below, the court denies the motion for default judgment because

6

Maxitransfers has neither shown diversity of citizenship nor met the amount in controversy requirement.

I. **Diversity of Citizenship**

Congress has authorized the federal district courts to exercise diversity jurisdiction over certain types of cases between "diverse" parties. 28 U.S.C. § 1332(a)(1). "But such diversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'" Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014) (citing Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005)). A person is a citizen of a state where he resides and intends to reside indefinitely. See id. (citing Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983)). An unincorporated association, like an LLC, is a citizen, for purposes of diversity, of each state where its members are citizens or domiciled. See Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238–39 (10th Cir. 2015) (citing Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990) (holding that the citizenship of a limited partnership is determined by the citizenship of each of its partners, both general and limited)). The citizenship of a trust depends on the citizenship or domicile of its trustee, as well as its beneficiaries. Conagra Foods, Inc. v. Americold Logistics, LLC, 776 F.3d 1175, 1181 (10th Cir. 2015) (concluding that "at a minimum, a trust's membership includes the trust's beneficiaries" as well as its trustee(s)), as amended (Jan. 27, 2015), aff'd sub nom. Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378 (2016).[2]

---

[2] Maxitransfers argues that a trustee's domicile dictates the trust's citizenship for diversity purposes. (Compl. ¶ 11 ("Mr. Niehaus' citizenship controls 2020 Maxitransfers Trust's citizenship and, by extension, Maxitransfers LLC's citizenship") (citing Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 465 (1980)).) But both the Tenth Circuit and Supreme Court rejected that exact argument. See Conagra Foods, Inc. v. Americold Logistics, LLC. 776 F.3d

The Complaint fails to support a reasonable inference that Maxitransfers is of diverse citizenship from the Defendants. Maxitransfers plausibly alleges that Envios, Multiservicios, and Refreskeria are each LLCs with just one member, Mr. Garcia. (Compl. ¶¶ 2, 4, 6, 8, 13–16.) Because Mr. Garcia lives in Utah and has resided there since at least 2012, the court can reasonably infer that each of the Defendants is domiciled in or is a citizen of Utah. (Id.) But the court cannot, without more information, discern where Maxitransfers is domiciled. Maxitransfers pleads that it is a limited liability company with just one member, the Trust. (Id. at ¶¶ 11–12; see also Pl.'s Corporate Discl. Statement, ECF No. 2.) Maxitransfers plausibly alleges that the Trust has just one trustee, Joseph Niehaus, who is domiciled in California. (Compl. ¶¶ 11–12.) But Maxitransfers does not include in its Complaint any details about the citizenship or domicile of the Trust's beneficiaries. Without this information about the Trust's citizenship, the court cannot exercise subject matter jurisdiction—meaning that it must deny Maxitransfers' motion for default judgment. See Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. at 382.

## II.   Amount in Controversy

The court also finds that Maxitransfers' allegations are insufficient to demonstrate that the amount in controversy is over $75,000, the statutory minimum for subject matter jurisdiction in a diversity case. Dutcher, 733 F.3d at 987. "[T]he test to determine amount in controversy is not a sum ultimately found to be due, but the sum demanded in good faith." Interstate Med. Licensure Compact Comm'n v. Bowling, 113 F.4th 1266, 1275 (10th Cir. 2024) (citing Gibson

---

1175, 1181 (holding that a trust's citizenship must be derived from citizenship of all members, including, at minimum, its trustee(s) and beneficiaries); Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. at 382 (affirming the same and noting that "as we have reminded litigants before, Navarro had nothing to do with the citizenship of [a] 'trust'").

v. Jeffers, 478 F.2d 216, 220 (10th Cir. 1973)). Here, Maxitransfers' motion expressly states the sum demanded of each Defendant and provides support, rooted in the relevant contracts and applications for attorney's fees, for these amounts. In total, Maxitransfers seeks $130,369.21 in damages. Accordingly, the court must examine whether it has a basis to aggregate Maxitransfers' damages claims against each of the four Defendants.

As an initial matter, the court notes that multiple persons or companies may be joined in one action as defendants, like here, where:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Here, Maxitransfers' claims against the four Defendants can be appropriately joined in one case because interpreting the three MTAs, which are nearly identically worded, involves common questions of law. But that does not mean these Defendants are jointly liable for all of Maxitransfers' damages.

Rather, for a plaintiff to aggregate the value of multiple claims against multiple Defendants to satisfy the amount in controversy requirement, it must demonstrate that the different defendants are jointly liable, or jointly and severally liable, on its claim(s). See, e.g., Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957) (holding that damages can be aggregated if defendants are jointly liable); Century Ins. Co. v. Mooney, 241 F.2d 910, 912–13 (10th Cir. 1957) (finding separate claims could not be aggregated to meet the amount in controversy requirement where "the liability of each company under its [own respective] policy was separate and distinct from that of the other companies" meaning "there was no joint or undivided liability"); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal

Practice and Procedure § 3704, at 138–41 (3d ed. 1998) ("[T]he cases are quite clear and virtually unanimous that separate and distinct claims by different plaintiffs still cannot be aggregated for purposes of measuring the amount in controversy. The same rule applies when suit is brought by a single plaintiff against multiple defendants.").

The court finds that, in seeking breach of contract damages, including attorney's fees, Maxitransfers has not sought an amount of damages for any claim against a single Defendant—or claim(s) for which multiple Defendants are jointly liable—sufficient to meet the $75,000 amount in controversy threshold.[3] Rather, Maxitransfers concedes that each Defendant is either liable individually for its breach, or jointly liable for certain damages, for amounts totaling less than $75,000. And Maxitransfers has provided no basis for the court to aggregate its total unpaid contract balances ($107,123.28) or its total attorney's fees ($23,245.93) against all Defendants.

Specifically, the facts pled indicate that the Envios MTA is a contract between just two parties: Maxitransfers and Envios.[4] Accordingly, the performance of that contract, including any breach, involved only those two parties. The same is true of the Multiservicios MTA and the Refreskeria MTAs. As a result, the court estimates the damages that each Defendant is plausibly liable for.

The court first notes that its amount in controversy analysis will include Maxitransfers' "reasonable" attorney's fees given that the contracts the Defendants breached all had attorney's

---

[3] Maxitransfers' motion also seeks post-judgment interest on the contractual damages owed at the "rate allowed by 28 U.S.C. § 1961(a)." (ECF No. 20 at 10.) While Maxitransfers has not argued for its inclusion, the court notes that post-judgment interest is never included in the amount in controversy analysis. See 28 USCA § 1332(a).

[4] The Complaint contains no allegations sufficient to show that the Defendants are alter egos of one another and therefore liable for their respective contractual obligations. Cf. LM Ins. Corp. v. Spaulding Enterprises Inc., 533 F.3d 542, 548 (7th Cir. 2008) (allowing plaintiffs to aggregate claims to meet amount in controversy requirement where allegations were sufficient to pierce the defendant corporations' corporate veil).

fees provisions. E.g., Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388 (3d Cir. 2016) (finding that, while attorney fees generally do not constitute part of amount in controversy necessary for diversity jurisdiction, they do when their payment is provided for by the terms of an underlying contract). However, Tenth Circuit law is clear that the court cannot aggregate the total attorney's fees that Maxitransfers has incurred to satisfy the amount in controversy requirement against each Defendant. See, e.g., Martin v. Franklin Cap. Corp., 251 F.3d 1284, 1293 (10th Cir. 2001), abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81 (2014); Spielman v. Genzyme Corp., 251 F.3d 1 (1st Cir. 2001). In other words, Envios' potential liability is not the contractual damages alleged against it ($18,947.92) plus all of Maxitransfers' $23,245.93 in attorney's fees. Rather, Envios is liable for only some portion of Maxitransfers' attorney's fees.

But Maxitransfers admits that it cannot distinguish how much of the attorney's fees each Defendant is responsible for. (See ECF No. 20 at 9 ("Maxitransfers incurred attorney's fees and costs prosecuting this action totaling $23,245.93 which it could not distinguish between the defendants").) The court has four cognizable avenues, in the context of its amount in controversy analysis, for calculating each Defendant's share of the liability for Maxitransfers' attorney's fees: First, the court could attempt to apportion the attorney's fees equally between each Defendant in the case, adding one-quarter of the total fees ($5,811.25) to each Defendant's amount in controversy calculation. See De La Rosa, 113 F. Supp. 3d at 1151–52. Second, the court could allocate the attorney's fees in equal thirds between the three MTA transactions, dividing the one-third of the attorney's fees incurred to litigate the Multiservicios MTA's breach between Multiservicios and its guarantor, Mr. Garcia. Third, the court could allot attorney's fees based on the four Defendants' respective liability for the $107,123.28 in contract damages owed:

11

i.e. if Envios is responsible for $18,947.92 of the $107,123.28 owed, then it is responsible for 17.69% of Maxitransfers' attorney's fees.  Fourth, the court can assume, arguendo, that each Defendant is responsible for all of Maxitransfers' attorney's fees—even though Maxitransfers has conceded otherwise—and see whether any Defendant's liability meets the amount in controversy requirement.

While it is Plaintiff's burden to plead and show diversity jurisdiction in seeking default judgment, the court proceeds with the fourth scenario outlined above, attributing all of Maxitransfers' attorney's fees to each Defendant, to maximize Maxitransfers' potential recovery against each Defendant.  E.g., FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("the party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction."); Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1171 (10th Cir. 2011) ("[S]ufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor.").  But even under this approach, taking the Plaintiff's request for default judgment at face value, none of the four Defendants is liable for more than $75,000 between their contractual obligations and responsibility for Maxitransfers' attorney's fees.  The court illustrates its calculations below at Table 1.

Table 1: Maximum Possible Amounts Owed By Each Defendant

| Defendant | MTA Contractual Damages for Transfers | | Atty's Fees | Total |
|---|---|---|---|---|
| Envios | $18,947.92 (individually) | | $23,245.93 | $42,193 |
| Mr. Garcia | $12,214.74 (joint) | | $23,245.93 | $35,460 |
| Multiservicios | $39,502.42 (individually) | $12,214.74 (joint) | $23,245.93 | $74,963 |
| Refreskeria | $36,467.20 (individually) | | $23,245.93 | $59,713 |

Even if the court determines that Envios could be responsible for all of Maxitransfers' attorney's fees, the damages against Envios are, at most, $42,193. See Table 1. Consistent with this framework, Maxitransfers' damages against Refreskeria are, at most, $59,713. See id.

Maxitransfers alleges that some but not all damages related to the Multiservicios MTA, Promissory Note, and Guaranty Agreement are attributed to Multiservicios and Mr. Garcia independently, while some damages are attributable to these two Defendants jointly and severally. Specifically, Maxitransfers requests that the court award it $39,502 from Multiservicios, and $12,214.74 from Defendants Multiservicios and Mr. Garcia jointly and severally—meaning that it can pursue this $12,214.74 amount from either Multiservicios or Mr. Garcia—plus some share of Maxitransfers' attorney's fees. See Northington v. Marin, 102 F.3d 1564, 1568 (10th Cir. 1996) ("[W]hen all wrongdoers are before the court but none can prove nonliability, all can fairly be held jointly and severally liable because the odds are equal that each is liable."). But Maxitransfers' damages against Multiservicios are, at most, $74,963, while its damages against Mr. Garcia are, at most, $35,460.[5] See Table 1.

---

[5] In any event, as Maxitransfers concedes, Multiservicios' and Mr. Garcia's actual share of the responsibility for Maxitransfers' attorney's fees should be far lower.

The Complaint provides no basis for concluding that Maxitransfers is entitled to additional damages against any Defendant. Therefore, accepting Maxitransfers' amount-in-controversy allegations as both true and reasonable, none of the Defendants are plausibly liable for more than $75,000. The court therefore lacks subject matter jurisdiction over the action and accordingly cannot enter default judgment.

## ORDER

For these reasons, the court ORDERS as follows:

1. The Plaintiff's Motion for Default Judgment (ECF No. 20) is DENIED without prejudice;

2. Within 14 days of this order, the Plaintiff must show cause why this case should not be dismissed for lack of subject matter jurisdiction.

Dated this 3rd day of April, 2025.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge